OPINION OF THE COURT
Wachtler, J.
Appellants, as third-party plaintiffs in these actions, seek to hold a municipality proportionately liable to the extent that its negligent conduct contributed to the occur *257 rence of a motel fire, for which appellants may be cast in damages to plaintiff motel guests and their representatives. Two questions are presented for our determination. First, despite the absence of any actionable duty owed by a third party directly to the injured plaintiffs, may the third party be held liable for a proportionate share of the damages, on the basis of a breach of duty to those who must respond directly in damages to plaintiffs? If the absence of a duty to plaintiffs is no bar to such a claim, a second issue is whether appellants have sufficiently alleged a special duty on the part of the municipality, the breach of which will render it liable to appellants for having negligently exposed them to such potential tort liability.
As a result of an extensive fire at the Holiday Inn in the Town of Greece, several actions for wrongful death, personal injuries and property damage were brought by or on behalf of motel guests. Named as defendants were the Holiday Inns, Inc., which operated the motel pursuant to a lease; the corporation which undertook the development and construction of the motel, its principals and its successors; the present and previous owners of the premises; and the Town of Greece. The theory of negligence pleaded against the town was predicated on its failure to require the motel owners to comply with applicable fire and safety laws and its failure to inspect the construction of the motel adequately. Because plaintiffs had, in this regard, alleged no more than a violation of a general duty owed by the town to the public at large, the complaints against the town were held insufficient to state a cause of action and were therefore dismissed (Garrett v Town of Greece, 78 AD2d 773, affd on opn below 55 NY2d 774).
Thereafter, the remaining defendants/third-party plaintiffs sought to implead the Town of Greece, alleging that, to the extent the several plaintiffs’ damages were caused or exacerbated by the town’s wrongful conduct, it is liable to third-party plaintiffs for “contribution or indemnification”. The town’s liability is based on an alleged breach of a special duty owing third-party plaintiffs in that it: (1) permitted alterations in the originally approved building .plans which did not comply with applicable fire and safety laws, codes and regulations; (2) issued a certificate of *258 occupancy representing that the building was safe and in compliance with fire and safety laws, notwithstanding the existing, obvious violations of those laws; and (3) thereafter negligently failed to uncover the violations upon inspection.
The town’s motions to dismiss the third-party complaints[1] for failure to state a cause of action were denied by Special Term. The Appellate Division reversed and granted the motions, holding that the town may not be liable to any extent to third-party plaintiffs in the absence of a duty owed to plaintiffs. Holiday Inn and the present and previous owners of the motel have appealed to this court.[2] There should be a modification of the order of the Appellate Division.
The issue is whether the town, having been held to owe no duty to plaintiff motel guests under the circumstances of this case can nevertheless be held proportionately liable to the owners and lessee/operator of the motel for its breach of an independent duty owing these parties. Generally, apportionment rights among wrongdoers arise when “two or more tort-feasors share in responsibility for an injury, in violation of duties they respectively owed to the injured person” (Smith v Sapienza, 52 NY2d 82, 87; Holodook v Spencer, 36 NY2d 35; Rogers v Dorchester Assoc., 32 NY2d 553). Principles allowing apportionment among tort-feasors reflect the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault (Dole v Dow Chem. Co., 30 NY2d 143,152). We have recognized that contribution rules have *259 developed to remedy an injustice to joint tort-feasors, who were permitted no general apportionment rights under prior law (Klinger v Dudley, 41 NY2d 362, 370).
That being the case, contribution rights on behalf of concurrent wrongdoers have been upheld in numerous circumstances in which the injured person has himself had no right of recovery against a particular third party. Thus, in Dole v Dow Chem. Co. (supra), the defendant manufacturer of a chemical alleged to have caused the death of plaintiff’s decedent was permitted to assert a contribution claim against the decedent’s employer, despite the bar imposed by the Workers’ Compensation Law to direct suit by plaintiff against the employer. In Klinger v Dudley (supra), we recognized contribution rights in favor of tortfeasors against third parties as to whom plaintiffs had no direct right of recovery due either to their failure to join the third parties as defendants or to some special defense barring recovery.
Of course, the holdings in such cases do not resolve the precise question raised on the present appeal, for those cases involved circumstances in which the third party had no liability to the injured person, in contrast to the absence of a duty owed him. Nevertheless, these cases demonstrate that proportionate liability rights among joint tort-feasors are analytically distinct from the rights and obligations of the parties to the injured person and that the nexus of duty between wrongdoers may exist independently of the respective duties owing a plaintiff.[3]
The issue of whether an obligation of proportionate liability can exist on the part of one who owes no duty to *260 the plaintiff has been dealt with by this court in the context of parental responsibility for the actions of an infant child. It is well established, under New York law, that a child has no cause of action against his parent for the latter’s failure to supervise the child adequately (Holodook v Spencer, supra). Because the parent owes no duty to the child in this regard, a tort-feasor who has caused injury to a child may not seek contribution from the parent (id., at p 51). Where a parent has entrusted a child with a dangerous instrumentality, however, and has thereby created an unreasonable risk of harm to another, the parent may be cast in damages to the injured third party, even though the child has no comparable cause of action against the parent. This well-recognized duty on the part of a parent to third parties led to this court’s holding in Nolechek v Gesuale (46 NY2d 332) quite apart from the general principle that to be held proportionately liable a wrongdoer must owe a duty directly to the injured person.
Nolechek involved an action brought by a father, both individually and as administrator of his son’s estate, against a landowner and others for the wrongful death of his son resulting from a motorcycle accident. The complaint alleged that the landowner had negligently permitted a dangerous condition to exist on his property which caused the accident. The landowner interposed a counterclaim against the father, seeking to impose proportionate liability on the father for his wrongful conduct in providing his vision-impaired son with a motorcycle. This court permitted the counterclaim to stand, holding that a tort-feasor cast in damages for injuries to a child may seek proportionate recovery, there termed “contribution”, from the parent where the child’s injury and the tort-feasor’s liability resulted, in part, from negligently entrusting the child with a dangerous instrumentality. Analyzing the question of the duty owed by the father to the landowner as distinct from the duty (or lack thereof) owed by the father to the son, this court concluded that the absence of an actionable duty running from father to son did not prevent the landowner from asserting a claim against the father, based *261 upon an independent duty owed the landowner. The father’s duty to protect the landowner from unreasonable risks of harm was deemed to encompass an obligation to prevent foreseeable exposure to potential tort liability for injury to the child.
Nolechek’s recognition of the proportionate liability claim notwithstanding the absence of a duty owed directly to the injured person is, we believe, entirely consistent with the policy underlying principles of apportionment and comparative negligence. If an independent obligation can be found on the part of a concurrent wrongdoer to prevent foreseeable harm, he should be held responsible for the portion of the damage attributable to his negligence, despite the fact that the duty violated was not one owing directly to the injured person. Thus if the town owed a duty to appellants to protect them from foreseeable risks of harm, the breach of which has combined with appellants’ own negligence to render them answerable in damages to the injured motel guests, the town should be required to bear responsibility for the injury its negligence has caused appellants, in proportion to its own degree of fault.
We turn, then, to the instant case and the question whether the town owed any duty to appellants — the owners and the lessee/operator of the motel — to use reasonable care in issuing a certificate of occupancy and approving alterations in construction to ensure that the premises were not in blatant violation of fire and safety laws. When a claim is made that a municipality has negligently exercised a governmental function, liability turns upon the existence of a special duty to the injured person, in contrast to a general duty owed to the public (Florence v Goldberg, 44 NY2d 189; Sanchez v Village of Liberty, 42 NY2d 876, app dsmd on other grounds 44 NY2d 817). Such a duty is found when a special relationship exists between the municipality and an individual or class of persons, warranting the imposition of a duty to use reasonable care for those persons’ benefit (see Sanchez v Village of Liberty, supra). This principle operates to impose liability where the municipality has violated a duty commanded by a statute enacted for the special benefit of particular persons (see Motyka v City of Amsterdam, 15 *262 NY2d 134); where the municipality has voluntarily assumed a duty, the proper exercise of which was justifiably relied upon by persons benefited thereby (Florence v Goldberg, supra; cf. Schuster v City of New York, 5 NY2d 75); or where it assumes positive direction and control under circumstances in which a known, blatant and dangerous safety violation exists (Smullen v City of New York, 28 NY2d 66).
The several third-party complaints before us allege that the town, although having knowledge that blatant fire and safety code violations were involved, nevertheless approved changes in the building plans and thereafter issued a certificate of occupancy representing the premises to be safe and free of violations. Although the mere failure to uncover fire and safety violations during inspection clearly would not constitute a sufficient predicate for imposing liability on the town (e.g., Smullen v City of New York, supra, at p 70), much more in the way of a special relationship between the town and appellants is alleged here. If, as is alleged in the complaints, known, blatant, and dangerous violations existed on these premises, but the town affirmatively certified the premises as safe, upon which representation appellants justifiably relied in their dealings with the premises, then a proper basis for imposing liability on the town may well have been demonstrated (see Gordon v Holt, 65 AD2d 344, mot for lv to app den 47 NY2d 710; Doyle v 800, Inc., 72 AD2d 761; Sexstone v City of Rochester, 32 AD2d 737).[4] While such liability would plainly encompass direct injury to appellants, it may also properly include the economic damages they may suffer as a result of judgment against them in favor of the motel guests. Thus, the town may be held proportionately liable *263 for such damages if it is found that such exposure to potential tort liability was a foreseeable harm resulting from the town’s alleged breach of duty (see Nolechek v Gesuale, supra, at p 340).[5]
Finally, we note in this connection that the town may not escape liability by asserting that the issuance of a certificate of occupancy involves a purely discretionary function. Although it has been held that the grant or denial of a building permit involves a discretionary governmental function, the exercise of which may not form the basis for liability in tort (e.g., Rothkamp v Young, 21 AD2d 373, affd on opn below 15 NY2d 831), a different situation is presented here. The town had a duty, in the face of the alleged blatant and dangerous code violations, to refuse to issue a certificate of occupancy.[6] No exercise of judgment or weighing of competing factors was necessary. Accordingly, under the circumstances of this case, the obligation imposed on the town cannot be viewed as discretionary.
Although we hold that the town may be held proportionately liable to appellants if their allegations are proven, we conclude that appellants have stated no basis for implied indemnification by the town, and to that extent, the town’s motions to dismiss were properly granted by the Appellate Division. There is no view of the third-party complaints supporting a theory that appellants, if held liable to plaintiffs, are being cast in damages solely for the negligence of the town or on the basis of vicarious or imputed liability (see, e.g., D’Ambrosio v City of New York, 55 NY2d 454; Rogers v Dorchester Assoc., 32 NY2d 553, supra; Margolin *264 v New York Life Ins. Co., 32 NY2d 149). Appellants have at most stated a basis for proportionate liability on the part of the town, and the claims for indemnification were therefore properly dismissed.
Accordingly, the order of the Appellate Division should be modified, with costs to appellants, to the extent of denying the motions of third-party defendant Town of Greece to dismiss appellants’ third-party complaints as to the claims for proportionate liability set forth therein, and as so modified, the order should be affirmed, and the case should be remitted to Supreme Court, Monroe County, for the fixation of the time within which answers of the town to the third-party complaints may be served and for further proceedings on the pleadings.

. The town made motions in 11 of the actions against it. As to the remaining 10 actions, brought by defendants/third-party plaintiffs Comparato and Corona Court, Inc., against the town, counsel stipulated to be bound by the determination on the motions made in the first 11 actions.

. Although the builders of the motel are also named as defendants and have served third-party complaints against the town, no issue concerning them is presented on this appeal. The construction company itself has taken no appeal. Appellant Spezio, although a principal of the original corporation which built the motel, alleges that he had nothing to do with the design or construction phase of the development. Appellant Comparato, although majority stockholder of that corporation, has framed the issue on his appeal solely in terms of the town’s duty to him as an owner of the premises.

. Although based upon principles of indemnification, two early cases also demonstrate the propriety of examining separately the duty owed a plaintiff by a wrongdoer and an independent duty owed by a third party to respond in indemnification. In Schubert v Schubert Wagon Co. (249 NY 253), the common-law rule barring suit between spouses was held not to preclude an action by a wife against her husband’s employer on a theory of respondeat superior, even though the employer could seek indemnity from the husband whose negligence caused the wife’s injuries. The court recognized that an independent duty of the husband to give faithful service to his employer formed the basis for any indemnification claim. Similarly, in Westchester Light. Co. v Westchester County Small Estates Corp. (278 NY 175), a utility company which had been held liable for the death of a workman was permitted to seek indemnity from decedent’s employer, because the employer’s liability was grounded upon an independent duty owed by it to the utility.

. Interesting in this connection is the language of subdivision 5 of section 302 of the Multiple Residence Law, which provides that every person who in good faith purchases a multiple dwelling on which a certificate of occupancy has been issued is entitled to rely on the certificate: “Whenever any person has so relied upon such a certificate, no claim that such dwelling had not, prior to the issuance of such certificate, conformed in all respects to the provisions of this chapter shall be made against such person * * * with respect to such multiple dwelling”. Thus, the statute pursuant to which a certificate of occupancy is issued itself appears to contemplate a special relationship between the municipality and a person relying on its certificate.

. The dissenting writing overlooks the critical distinction we draw between the general duty owed by a municipality to members of the public at large (violation of which, we agree, under present law, creates no liability on the part of the municipality) and a special duty owed by the municipality to a particular category of persons, here the owners and lessee/operator of the premises, for violation of which we hold that the municipality may be liable. Additionally, the cases on which the dissenting opinion relies involve claims only of the failure to perform a duty on the part of the municipality, whereas in the present case it is alleged that the municipality not only negligently failed properly to inspect the premises but also that it affirmatively issued a false certificate of occupancy, actively misrepresenting that there were no violations of applicable fire and safety laws.

. (See Multiple Residence Law, § 302, and n 4, supra.)